UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TAMIKA WILLIAMS,
          Plaintiff,

     v.

ILLINOIS DEPARTMENT OF
HUMAN SERVICES,
          Defendant

No. 24-cv-03631

Judge Jeremy C. Daniel

## MEMORANDUM OPINION AND ORDER

The plaintiff, Tamika Williams, alleges that, following her June 2020 promotion, her employer, defendant Illinois Department of Human Services, discriminated against her based on her race and her sex, retaliated against her, and created a hostile work environment. The defendant has moved for summary judgment on all of the plaintiff's claims. For the reasons stated below, the Court grants the defendant's motion.

## BACKGROUND

### Preliminary Matters

Local Rule 56.1(b)(3) requires a party opposing a motion for summary judgment to file "a concise response to the movant's statement" that includes "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon" and "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary

judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." With respect to the latter, the plaintiff did not file a statement of additional material facts. Instead, the plaintiff directly cited the record in her brief opposing summary judgment. The Court will consider that evidence, despite the plaintiff's failure to comply with Local Rule 56.1(b)(3)(C).

The Court will not, however, consider the plaintiff's declaration, which the plaintiff relied on to deny certain statements of material fact offered by the defendant. The plaintiff did not sign her declaration. (*See* R. 54-1 at 2.) And, despite the defendant noting the plaintiff's failure to sign her declaration, (R. 63 at 3-4), the plaintiff has not cured that deficiency. Further, aside from a reference to grievances filed by a union on the plaintiff's behalf,[1] the plaintiff's declaration does not cite any other evidence that supports or corroborates the statements made in the declaration. (*See generally* R. 54-1.) Absent a signature, other evidence that supports the statements made in the declaration, the defendant admitting to the statements made in the declaration, or some other means of curing the deficiency, the Court cannot consider the statements made in the declaration. This applies to the plaintiff's opposition to the defendant's statement of material fact nos. 1, 13, 14, 15, 16, 17, 21, 22, 23, 24, 26, 30, 31, 33, 36, 41, 42, 47, and 64, each of which the Court considers undisputed for purposes of the defendant's motion for summary judgment.

---

[1] The plaintiff filed these grievances at Dkt. No. 54-2. The grievances are part of the summary judgment record before the Court.

**Facts**

On June 16, 2020, the defendant promoted the plaintiff to Unit Manager. (R. 53 ¶ 1.) Prior to her promotion, the plaintiff worked for the defendant as a Social Service Program Planner III. (*Id.* ¶ 6.) In her new role, the plaintiff received several performance reviews. The first covered June 16, 2020, to August 15, 2020.[2] (R. 44-9 at 1.) The plaintiff's supervisor, Brian Bond, reported that the plaintiff did not meet two of six objectives and that he did not have sufficient opportunity to observe the plaintiff in five of six areas. (*Id.* at 2-3.)

The next performance review covered June 16, 2020, to October 15, 2020. (R. 44-10 at 1.) The plaintiff's supervisor, now Nick Marsters, reported that the plaintiff did not meet four of six objectives and that she needed to improve in four of eight areas. (*Id.* at 44-10.)

The next performance review covered October 16, 2020, to March 15, 2021. (R. 44-12 at 1.) Mr. Marsters reported that the plaintiff did not meet six of seven objectives and that she needed to improve in seven of eight areas. (*Id.* at 2-3.) Mr. Marsters included the plaintiff's participation in a Corrective Action Plan as an objective for the plaintiff's next reporting period. (*Id.* at 4.) The plaintiff declined to participate in the Corrective Action Plan. (*Id.* at 8.)

On March 26, 2021, the plaintiff received an oral reprimand for "disrespect and insubordination." (R. 44-13.) An email dated March 17, 2021, from Mr. Marsters to

---

[2] The document has a "period of report" from June 16, 2020, to August 15, 2019. (R. 44-9 at 1.) That cannot be, and is inconsistent with the timeline the parties agree on. The Court therefore accepts that the end of the reporting period for this performance review is August 15, 2020.

3

the plaintiff, directed the plaintiff to respond to the attached performance review and Corrective Action Plan by March 19, 2021. (R. 44-12 at 10-11.) In an email dated March 19, 2021, from the plaintiff to Mr. Marsters, the plaintiff told Mr. Marsters that she had not had an opportunity to review the documents and that she would provide a response by March 26, 2021. (*Id.* at 10.) In an email dated March 26, 2021, from the plaintiff to Mr. Marsters, the plaintiff told Mr. Marsters that she declined to participate in the Corrective Action Plan. (*Id.* at 9.) The plaintiff received an oral reprimand that same day for failing to reply to Mr. Marsters' email by the March 19, 2021, deadline. (R. 44-13.)

In April 2021, Ekerete Akpan replaced Mr. Marsters as the plaintiff's supervisor. (R. 53 ¶ 40.) From that time, Mr. Akpan directly supervised both Mr. Marsters and the plaintiff. (*Id.*)

In April 2022, the plaintiff received a two-day suspension for insubordination and disrespect of a direct supervisor. (R. 44-15.) The plaintiff's supervisors directed her to be at the Clinton Building on March 16, 2022, at 8:30 a.m. (R. 53 ¶¶ 43 and 45; R. 44-15 at 2.) The plaintiff did not report to the Clinton Building at 8:30 a.m. (R. 53 ¶48; R. 44-15 at 2.) On March 17, 2022, the plaintiff received a pre-disciplinary meeting notice that Mr. Akpan would pursue disciplinary action against the plaintiff based on her failure to report to the Clinton Building as directed. (R. 44-15 at 2.)

On March 18, 2022, the plaintiff told Mr. Bond that Mr. Akpan intimidated her. (R. 53 ¶ 49.) Mr. Bond investigated the claim. (Id. ¶ 50.) During the investigation, Mr. Bond separated the plaintiff and Mr. Akpan by having them work remotely. (Id.

4

¶ 51.) Mr. Bond determined that the plaintiff's claims could not be substantiated. (Id. ¶ 52.)

In April 2022, the plaintiff signed a performance review covering June 16, 2020, to June 15, 2021. (R. 44-16 at 1, 6.) Mr. Akpan reported that the plaintiff did not meet any of her seven objectives, that she needed to improve in one area, and that he had not had sufficient time to observe the plaintiff in seven areas. (*Id.* at 2-3.) Mr. Akpan included the plaintiff's participation in a Corrective Action Plan as an objective for the plaintiff's next reporting period. (*Id.* at 4.) Mr. Akpan further noted that the plaintiff had not been consistently available for training. (*Id.*)

In February 2023, the plaintiff received a seven-day suspension, later reduced to five days, due to her "failure to follow supervisory instructions on October 6, 11, 12, 14, and 18, 2022, to complete [her] job assignments accurately and timely." (R. 53 ¶¶ 59-61.)

In late February 2023, Mr. Akpan signed a performance review for the plaintiff covering November 11, 2021, to October 30, 2022. (R. 44-18 at 1, 6.) Mr. Akpan reported that the plaintiff did not meet ten of twelve objectives, that she needed to improve in seven areas, that she met expectations in two areas, and that he had not had sufficient time to observe the plaintiff in one area. (*Id.* at 2-3.) Mr. Akpan noted that the plaintiff was on leave for two months of the evaluation period. (*Id.* at 4.) In the employee's comments section, the plaintiff noted that she was on leave from August 1, 2022, to January 3, 2022, and stated that she "did not agree to or give input to" the Corrective Action Plan. (*Id.* at 6.)

## LEGAL STANDARD

"Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Brown v. Chicago Transit Auth.*, No. 25-1750, 2026 WL 1815909, at *5 (7th Cir. June 24, 2026). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## ANALYSIS

The defendant makes several arguments in support of its motion for summary judgment. According to the defendant, the plaintiff cannot prove her discrimination claims because the reprimands the plaintiff received did not change the terms or conditions of her employment, the plaintiff's performance shows that she did not meet her employer's legitimate expectations, and because the defendant had legitimate, non-discriminatory reasons for its actions. (R. 45 at 7-9.) The defendant also argues that the evidence would not permit a reasonable factfinder to conclude that the plaintiff's race or sex caused an adverse employment action. (*Id.* at 11-12.) The defendant further argues that the plaintiff cannot show that her work environment was hostile or that any harassment was based on the plaintiff's race or sex. (*Id.* at 12-13.) The defendant further argues that the plaintiff cannot prove retaliation because she did not engage in protected activity and that she cannot establish a causal

connection between her workplace complaints and any adverse action against her. (*Id.* at 13-14.)

### Discrimination Claims

"The legal standard in a Title VII case is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Burton v. Will Cnty. Sheriff's Merit Comm'n*, 176 F.4th 544, 548 (7th Cir. 2026) (citation and quotation omitted). Here, the evidence before the Court would not permit a reasonable fact finder to conclude that the plaintiff's race or sex caused an adverse employment action. The plaintiff took a new position and failed to meet the challenge of that new position. After an initial performance review where the plaintiff's supervisor did not have sufficient opportunity to observe the plaintiff, the plaintiff received several performance reviews where her supervisor determined that the plaintiff failed to meet her objectives and required improvement in most areas. To facilitate the plaintiff's improvement, the defendant assigned a Corrective Action Plan to the plaintiff. The plaintiff initially declined to participate in the Corrective Action Plan, and ultimately failed to complete the Corrective Action Plan. Along the way, the plaintiff ignored instructions from her supervisors. As a result, the plaintiff received reprimands and suspensions for insubordination and disrespecting her supervisors. There is no evidence that the plaintiff's race or sex played any role in those reprimands or suspensions.

The plaintiff has not identified any evidence to the contrary. Despite references to "direct and circumstantial" evidence of discrimination, (*see* R. 58 at 5-6), the plaintiff cites no such evidence. One of the few record cites provided by the plaintiff points to Mr. Bond's deposition testimony. (*See* R. 58 at 6.) That testimony concerns an October 2020 discussion involving Mr. Bond, Mr. Marsters, and Gary Kramer about the plaintiff's performance. (R. 54-3 at 14.) Mr. Bond explained that the plaintiff's first few months did not go well, that the plaintiff experienced some system access "glitches," and that he was surprised that the plaintiff was not able to "pick things up" as she took on her new responsibilities. (*Id.* at 15.) Mr. Bond testified that he, along with Mr. Marsters and Mr. Kramer, thought the plaintiff should return to her prior position. (*Id.*) Nothing about that testimony provides evidence of discrimination. Rather, it tracks the evidence provided by the defendant that the plaintiff failed to meet the demands of her new position. Looking at that evidence as a whole, no reasonable jury could conclude that the plaintiff's race or sex caused the defendant to reprimand or suspend the plaintiff.

In her opposition to the defendant's motion, the plaintiff references several of the factors set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (*See, e.g.*, R. 58 at 8.) Under *McDonnell Douglas*, a plaintiff must establish a prima facie case of discrimination by presenting evidence that a reasonable jury could find that: (1) she belongs to a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated employee who was not in her protected class was treated better by

the defendant. *See Marshall v. Indiana Dep't of Corr.*, 973 F.3d 789, 791–92 (7th Cir. 2020). If the plaintiff makes that showing, then the burden of production shifts to the defendant to state a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 792. After that, the burden shifts back to the plaintiff to present evidence that the stated reason is a pretext for discrimination. *Id.*

The plaintiff has not shown that she met her employer's legitimate expectations. The plaintiff argues that the defendant denied the plaintiff "the training and system access necessary to perform her job duties." (R. 58 at 8.) The record contradicts that argument. The performance reviews establish the defendant's efforts to provide the plaintiff with training and remedial instruction. That was the purpose of the Corrective Action Plans that the plaintiff resisted.

As for system access, the record shows that Mr. Bond authorized the plaintiff to receive new hardware, software, and services in connection with her new position. (R. 53 ¶¶ 8, 9, 11, 13, and 14; *see generally* R. 44-6.) On March 22, 2021, Mr. Bond authorized additional software, "Adobe Pro," for the plaintiff because that software was "needed for her job duties and for functionality with the new laptop." (R. 44-6 at 1.) These actions contradict the plaintiff's conclusory claims that the defendant denied the plaintiff the technical support she needed to perform her job. They show that the defendant tried to get the plaintiff up and running in her new position and, when the plaintiff noted that she needed a particular software program, she received it.

Notably, the plaintiff does not substantiate her claims that she needed certain hardware or software to do her job. There is no evidence to support the claim and there is no explanation as to what job functions any lack of the hardware or software prevented her from doing. Without such evidence or explanation, there is no way to determine the extent to which any lack of hardware or software correlated to the identified deficiencies in the plaintiff's job performance. More fundamentally, however, the plaintiff has not provided any evidence that any denial of system access to her was because of her race or gender.

The plaintiff also has not shown that the defendant treated another similarly situated employee better than the plaintiff. The plaintiff identifies Mr. Marsters as a similarly situated employee. Mr. Marsters did hold a similar position. But the plaintiff offered no evidentiary support for her claim that Mr. Marsters "was not disciplined for similar, or more serious, conduct." "To prevail by showing a similarly situated employee was treated differently, a plaintiff must show the purported comparator was directly comparable to her in all material respects so as to eliminate other possible explanatory variables." *Mitchell v. Exxon Mobil Corp.*, 143 F.4th 800, 810 (7th Cir. 2025) (quotation and citation omitted). There is no evidence of any misconduct by Mr. Marsters. Nor is there any evidence that Mr. Marsters did not meet deadlines, did not report as directed, or declined to participate in a Corrective Action Plan. The plaintiff did, and each provided a legitimate, non-discriminatory reason for the adverse employment action that the plaintiff has not shown to be pretextual.

10

**Retaliation Claim**

"A plaintiff must prove three elements for a retaliation claim: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity." *Rongere v. City of Rockford*, 99 F.4th 1095, 1104 (7th Cir. 2024). The plaintiff claims that she "engaged in protected activity by filing internal complaints of discrimination, pursuing union grievances, and filing charges with the Equal Employment Opportunity Commission." Aside from a union grievance, (R. 54-2), the plaintiff has not made any of those documents part of the record.

In April 2021, the plaintiff filed a grievance related to her October 16, 2020, to March 15, 2021, performance review and Corrective Action Plan "issued to the employee on 3/31/21." (R. 54-2 at 2.) The grievance does not refer to any race or sex based discrimination. The grievance does not refer to a hostile work environment.

Contrary to the plaintiff's argument, the grievance does not correspond to an escalation in the defendant's practices. When she filed the grievance, the plaintiff's supervisors identified objectives the plaintiff had not met and areas in which the plaintiff should improve. The plaintiff's supervisors had also identified steps the plaintiff should take to improve. After the plaintiff filed her grievance, there was no substantive change in her supervisors' position. The plaintiff's supervisors continued to identify objectives the plaintiff had not met and areas in which the plaintiff should improve. The plaintiff's supervisors continued to insist on steps the plaintiff should take to improve. The fact that the defendant maintained the same position after the

11

grievance indicates that there was no retaliation. As discussed above, the defendant's actions toward the plaintiff stemmed from the plaintiff's misconduct and the need to provide additional training to the plaintiff.

According to the complaint, the plaintiff filed her first charge with the Equal Employment Opportunity Commission on June 9, 2021. (R. 1 ¶ 26.) Because the plaintiff has repeatedly cited the complaint as evidence, (*see*, *e.g.*, R. 58 at 7), the Court must make clear that the complaint is not evidence. It contains only allegations. And the plaintiff did not attach a copy of any EEOC charges to the complaint.[3] "Summary judgment is the 'put up or shut up' time in litigation." *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024). Here, the plaintiff has not put forth much evidence in support of her claims. And what evidence she has put forth does not create a genuine issue of material fact as to any of her claims.

**Hostile Work Environment Claim**

"To survive summary judgment on a hostile work environment claim, a plaintiff must show: (1) her work environment was objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Rongere v. City of Rockford*, 99 F.4th 1095, 1105 (7th Cir. 2024) (citation omitted). "Deciding whether a work environment is hostile requires consideration of factors like the frequency of improper conduct, its

---

[3] "In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 744 (7th Cir. 2007).

severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Id.* The only evidence the plaintiff cites in support of her hostile work environment claim is the complaint, which is not evidence, and the deposition testimony of Mr. Akpan. (R. 58 at 10.)

The cited testimony concerns allegations that Mr. Akpan allegedly cornered the plaintiff in a room and complaints the plaintiff had about Mr. Akpan's supervision. (R. 54-4 at 10-11.) None of that testimony references the plaintiff's race or sex. Nothing in that testimony suggests severe and pervasive conduct. As to the cornered allegation, Mr. Bond separated the plaintiff and Mr. Akpan while he investigated the plaintiff's allegations. The plaintiff has not claimed that Mr. Akpan intimidated or cornered her on any other occasion. As for her complaints about Mr. Akpan's supervision, the grievance and the plaintiff's comments in her performance reviews show that the plaintiff did not agree with her supervisors' assessments of her or their beliefs that a Corrective Action Plan was necessary. While few people want to hear that they are not up to the task, telling an employee that she is not meeting the demands of the job does not establish a hostile work environment. "To qualify as severe or pervasive under the third prong, the conduct must be 'extreme" considering all the circumstances." *Rongere v. City of Rockford*, 99 F.4th at 1105 (citation omitted). Under these circumstances, where the plaintiff was not meeting her employer's expectations, negative performance reviews and a Corrective Action Plan does not qualify as severe and pervasive offensive conduct.

**CONCLUSION**

The defendant's motion for summary judgment [43] is granted. The August 3, 2026, trial date is stricken. All other pending motions [72, 73, 74, and 77] are denied as moot. Civil case terminated.

Date: July 15, 2026

JEREMY C. DANIEL
United States District Judge